United States District Court
Southern District of Texas
**ENTERED**
August 20, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| APOLONIO HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-16-3325 |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION,[1] | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Before the Magistrate Judge in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 14), and Brief in Support (Document No. 14-1). Plaintiff did not file a Motion for Summary Judgment or respond to Defendant's Motion for Summary Judgment despite being given additional time to respond. (Document No. 17). After considering the Motion for Summary Judgment, the administrative record, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 14) be GRANTED, and that the decision of the Commissioner be AFFIRMED.

## I. Introduction

Plaintiff, Apolonio Hernandez ("Hernandez") brings this action pursuant to the Social

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Fed.R.Civ.P. 25(d), Andrew Saul is substituted for Nancy Berryhill as the defendant in the instant action.

Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying his applications for disability benefits ("DIB"), and Supplemental Security Income ("SSI"). Hernandez's Complaint suggests that he is unable to work due to his severe disability and that substantial evidence does not support the Administrative Law Judge's ("ALJ") decision, and that the ALJ, David Herbert, committed errors of law when he found that Hernandez was not disabled. Hernandez seeks an order reversing the ALJ's decision, and awarding benefits. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Hernandez was not disabled, that the decision comports with applicable law, and that the decision should, therefore, be affirmed.

## II. Administrative Proceedings

On May 10, 2013, Hernandez filed for DIB and SSI claiming he has been disabled since April 24, 2013, due to back pain. (Tr. 200-213). The Social Security Administration denied his applications at the initial and reconsideration stages. (Tr. 146-155). Hernandez then requested a hearing before an ALJ. (Tr.156). The Social Security Administration granted his request, and the ALJ held a hearing on February 22, 2015. (Tr.59-90).[2] On May 4, 2015, the ALJ issued his decision finding Hernandez not disabled. (Tr. 10-19).

Hernandez sought review by the Appeals Council of the ALJ's adverse decision. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or

---

[2] The administrative record shows that Hernandez previously filed for SSI. A transcript of the hearing held on September 11, 2009, is included in the administrative record but is not relevant for purposes of the instant appeal.

conclusions; (4) a broad policy issue may affect the public interest or (5) there is new and material evidence and the decision is contrary to the weight of all the record evidence. After considering Hernandez's contentions in light of the applicable regulations and evidence, the Appeals Council, on September 2, 2016, concluded that there was no basis upon which to grant Hernandez's request for review. (Tr.1-6). The ALJ's findings and decision thus became final.

Hernandez has timely filed his appeal of the ALJ's decision. The Commissioner has filed a Motion for Summary Judgment (Document No.14). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 438. (Document No. 11). There is no dispute as to the facts contained therein.

### III. Standard for Review of Agency Decision

The court, in its review of a denial of disability benefits, is only "to [determine] (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence

3

preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones* at 693; *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. *Id.* § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

4

> he is not only unable to do [her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

> The Commissioner applies a five-step sequential process to determine disability status:
>
> 1. If the claimant is presently working, a finding of "not disabled" must be made;
>
> 2. If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;
>
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience, and residual functional capacity, he will be found disabled.

*Id.*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v.*

*Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.[3]

In the instant action, the ALJ determined, in his May 4, 2015, decision that Hernandez was not disabled at step four. In particular, the ALJ determined that Hernandez had not engaged in substantial gainful activity since April 24, 2013, the alleged onset date (step one); that Hernandez's low back problems and obesity were severe impairments and that Hernandez's mental impairment of drug abuse, was not a severe impairment; (step two); that Hernandez does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in Appendix 1 of the regulations (step three); that Hernandez has the RFC to perform light work with the following limitations:

> The claimant can occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry up to ten pounds. The claimant can stand and/or walk about six hours in an eight-hour workday. He can sit for six hours in an eight-hour workday. The claimant can occasionally balance, stoop, bend, kneel, crawl, crouch, and climb. The claimant can never climb ropes, ladders, or scaffolding. The claimant can occasionally be exposed to hazards and dangerous equipment. (Tr. 15).

And that based on Hernandez's RFC, Hernandez could perform his past relevant work as a production assembler, and was not disabled within the meaning of the Act (step four). As a result, the Court must determine whether substantial evidence supports the ALJ's step four finding.

In determining whether substantial evidence supports the ALJ's decision, the court weighs

---

[3] Several of the Social Security Rulings ("SSRs") governing social security cases were amended or rescinded in 2016 and 2017. *See, e.g.,* 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016); 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017). Depending on the regulation, the new rules apply to claims filed either on or after January 17, 2017, or March 27, 2017. The regulations provide, in pertinent part, that "[w]e expect that Federal Courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Because Hernandez filed his applications prior to January 17, 2017, the Court will cite to the old rules that are applicable to claims filed prior to 2017.

four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## V. Discussion

The objective medical evidence shows that Hernandez has a history of back pain. By way of background information, records from before April 24, 2013, show that Hernandez received pain management treatment in Kansas at Medical Associates of Manhattan for back related problems. This treatment included facet block injections at L3-L4, L4-L5, L5-S1, and pain medication refills. (Tr. 304-343, 366-407). Hernandez was terminated as a patient on April 12, 2013, because he tested positive for medications that had not been prescribed by Medical Associates of Manhattan. (Tr. 342).

The medical records show that in 2013, Hernandez relocated from Kansas to Texas. Hernandez has received medical treatment for back pain at Access Health. Most of the treatment notes relate to prescription refills for Oxycodone and Nucynta. The progress note from Hernandez's July 2, 2013, office visit reveals that he complained of back pain and problems sleeping. The treatment note indicates that Hernandez weighed 219 pounds. The examination of the lumbar spine revealed a positive straight leg raise test, sensory abnormalities, and an abnormal gait and stance. Based on the examination results, Hernandez was diagnosed with backache. (Tr. 433-436). Hernandez was next seen on September 11, 2013. According to the treatment note, Hernandez weighed 221.4 pounds and had a body mass index score of 34.7. Hernandez continued to complain of back pain, stiffness, and pain radiating in both legs. Physical exam results revealed sensory abnormalities and abnormal gait and stance. His motor exam results were normal. Based on the

exam results, Hernandez was diagnosed with backache and herniated lumbar disc. His prescriptions were refilled. (Tr. 430-341). Hernandez had a follow- up appointment on November 5, 2013. The progress note shows that he weighed 214 pounds and had a body mass index score of 33.5. Examination of the lumbar spine showed a positive straight leg raising test, sensory abnormalities, abnormal reflexes and gait. Hernandez's motor exam results were normal. Hernandez's doctor opined that he had a herniated lumbar disc and backache and refilled his prescriptions. (Tr. 353, 426-428). The medical records further reflect that Hernandez requested medication refills on October 30, 2013, November 18, 2013, December 3, 2013, February 5, 2014, March 5, 2014, April 1, 2014, and April 4, 2014. (Tr. 356, 417-425). Hernandez's May 7, 2014, prescription refill request was denied and he was instructed to come to an appointment. (Tr. 416). Several months later, on November 6, 2014, Hernandez returned for an appointment. The progress note shows that he complained of back pain. He weighed 208 pounds and had a body mass index score of 32.8. The examination revealed no costovertebral angle tenderness, no motor abnormalities, and he had a normal gait and stance. Based on the examination results, Hernandez was diagnosed with lumbago. (Tr. 412-413).

Because Hernandez had applied for benefits, he was referred to Dr. Kannappan Krishnaswamy for an evaluation on August 21, 2013. (Tr. 345-347). Hernandez stated that he injured his back in 2006. Since then, he has lower back pain on the left side. At the time of the examination, Hernandez weighed 225 pounds and had a body mass index score of 34.22. Dr. Krishnaswamy noted that Hernandez's mood was happy and his affect was within normal limits. With respect to Hernandez's back, Dr. Krishnaswamy noted that Hernandez had a normal curvature of the spine. Hernandez had a limited range of motion with extension to zero degrees, flexion limited

8

to five degrees, and lateral flexion limited to ten degrees on both right and left. Paraspinal tenderness was noted. A straight leg raising test was positive on the right at fifteen degrees and positive on the left at ten degrees. Testing of the motor extremities was normal bilaterally. Sensory examination results revealed a decreased two point discrimination in the lower extremities, non-dermatomal distribution, and decreased vibratory sensation on the big toe. Hernandez had an antalgic gait. His reflexes were bilaterally symmetrical. The Babinski reflex test was negative. Dr. Krishnaswamy also reviewed lumbar spine x-rays, which revealed moderate degenerative changes over discs between L5 and S1 and moderate spoldylolisthesis. Based on the x-rays, and physical examination results, Dr. Krishnaswamy diagnosed lumbago and degeneration of intervertebral disc. And that with the diagnosis, Dr. Krishnaswamy opined that with lumbago, Hernandez would be limited as follows:

> To answer your specific questions, the patient has decreased ability to perform work activities such as six/stand for extended period of time, move about, lift and carry objects. He has no deficits in his ability to handle objects, hear or speak. There is moderate back pain and stiffness with some loss of motion (extension: 0 degrees, flexion: 5 degrees, lateral flexion: 10 degrees b/l). There is no atrophy noted. No motor or reflex abnormality; although there is sensory abnormality in the lower extremities; decreased vibration sense and decreased 2 pt discrimination). The gain is antalgic due to pain and stiffness. The patient is unable to heel or toe walk, unable to squat, hop or tandem walk. The patient cannot ambulate effectively without assistive device like cane or crutch due to pain/stiffness. (Tr. 346).

Also in connection with Hernandez's applications for DIB and SSI, disability determination unit physician, Dr. Roy Owens, reviewed the medical records and opined that Hernandez had no mental medically determinable impairment. (Tr. 94). Dr. Roberta Herman also reviewed Hernandez's records and opined that Hernandez could sit for six hours; stand and/or walk for six hours out of an eight hour day, could frequently lift and/or carry ten pounds, and occasionally lift

9

and/or carry twenty pounds, and had no limitations for pushing and/or pulling. As for postural limitations, Dr. Herman further opined that Hernandez could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl but could never climb ladders/ropes/scaffolds. No manipulative, visual, communicative, or environmental limitations were noted. (Tr. 100-108). On November 14, 2014, Dr. Charles Lankford and Dr. Robin Rosenstock, disability determination unit physicians, reviewed Hernandez's medication records, and concurred with the assessments of Drs. Owens and Herman. (Tr. 111-120).

Based on the objective medical evidence, as thoroughly discussed by the ALJ in his decision, substantial evidence supports the ALJ's determination at steps two and three. With respect to non-severe impairments, the ALJ evaluated Hernandez's history of drug abuse as a mental impairment. The ALJ found that Hernandez had no limitations in activities of daily living, had mild limitations in social functioning and in concentration, persistence or pace. He had no episodes of decompensation. As for his back, the objective medical evidence supports that ALJ's conclusion that he did not meet Listing 1.04 because the medical records do not show a compromise of a nerve root (including the cauda equina) or the spinal cord.

RFC is what an individual can still do despite his limitations. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996). The responsibility for determining a claimant's RFC is with the ALJ. *see Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Upon this record, the ALJ properly incorporated all the appropriate functional limitations in his RFC to account for

Hernandez's limitations due to his back. As discussed above, the ALJ thoroughly discussed the objective medical evidence; Hernandez's testimony, and the opinion evidence. The ALJ's RFC determination is consistent with the record as a whole. The ALJ, based on the totality of the evidence, concluded that Hernandez could perform light work limited to the extent that he could occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry up to ten pounds; stand and/or walk about six hours in an eight-hour workday, sit for six hours in an hour work day, occasionally balance, stoop, bend, kneel, crawl, crouch, and climb, and be exposed to hazards and dangerous equipment and was precluded from climbing ropes, ladders, or scaffolding. The ALJ gave specific reasons in support of this determination. This factor weighs in favor of the ALJ's decision.

### B. Diagnosis and Expert Opinion

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. The Social Security regulations require the Commissioner to evaluate every medical opinion it receives, regardless of its source. 20 C.F.R. § 404.1527(c). The regulations provide in pertinent part that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The ALJ has the ultimate responsibility to determine disability status. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). When good cause is shown, less weight, little weight, or even no weight may be given to a treating physician's opinion. *Id.* The Fifth Circuit in *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) held that when a treating physician's opinion about the nature and severity of a claimant's impairment is well-supported and consistent with other

11

substantial evidence, an ALJ must afford it controlling weight. The Fifth Circuit further instructed that an ALJ has good cause to discounting an opinion on a treating physician where "the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456. In such a situation, the ALJ must assess what weight the opinion should be given based on factors enumerated in 20 C.F.R. § 404.1527(c). Those factors include: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; (6) the specialization of the treating physician; and, (7) any other considerations. *Id.* These factors need not be considered when there is "competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," or when "the ALJ weighs treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Newton*, 209 F.3d at 458. Simply put: "[t]he Newton court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F.App's 461, 467 (5th Cir. 2009). An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455. "The ALJ cannot reject a medical opinion without an explanation." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017)(ALJ committed error in failing to address examining physician's conflicting opinion thereby making it impossible to know whether the ALJ properly considered and weighed the opinion); *but see Hammond v. Barnart*, 124 Fed. Appx. 847, 851 (5th Cir. 2005)(failure by ALJ to mention a piece of evidence does

12

not necessarily mean that the ALJ failed to consider it). Thus the absence of an express statement in the ALJ's written decision does not necessarily amount to reversible error because procedural perfection is administrative proceedings is not required. *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012)("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error.").

Here, the thoroughness of the ALJ's decision shows that he carefully considered the medical records and testimony, and that his determination reflects those findings accurately. The ALJ gave Dr. Krishnaswamy's opinion moderate weight. The ALJ noted that he was not a treating physician and his functional limitations were vague and inconsistent with clinical observations made by Hernandez's physicians at Access Health such as on September 11, 2013, and November 6, 2014. The ALJ also afforded the opinions of the disability determination unit physicians who reviewed Hernandez's records were given significant weight. That said, due to Hernandez's difficulties in gait and sensory examinations, the ALJ in formulating Hernandez's RFC, found that he could never be exposed to hazards and dangerous machinery. Upon this record, the Court concludes that the diagnosis and expert opinion factor also supports the ALJ's decision.

### C. Subjective Evidence of Pain

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute

conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Farrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames,* 707 F.2d at 166.

Here, Hernandez testified about his health and its impact on his daily activities. He offered no testimony or corroboration from his family or friends with respect to his complaints about his condition. Hernandez testified that he lives with his mother. (Tr. 66). He testified that his mother does most of the work around the house but that he has no difficulty sweeping, washing dishes or cooking. (Tr. 67). Hernandez testified that he has problems sitting, standing, bending or twisting because it bothers his back. According to Hernandez, "it feels like somebody stuck a knife in my back and just like twisted in my bone." (Tr. 69). Hernandez estimated that he could sit and/or stand for 30 to 45 minutes, walk a block and lift and carry around 15 pounds. (Tr. 69-70). As for his daily activities, Hernandez testified that he tries to move around and walk every day. He also sits and watches televison for six to seven hours. (Tr. 70-71). Hernandez testified that he had surgery on his back in 2007. According to Hernandez, the surgery fixed the nerve problem in his leg but now he

has back pain. (Tr. 76). He stated that he takes Execution and Flexural for pain. Without the medication, he rated the severity of his pain on a scale of one to ten as a seven. With pain medication, as a five. (Tr. 76). He stated that he has one bad day a month. (Tr. 83). With respect to his weight, Hernandez testified he weighed 225 pounds and was 5 feet, eight inches tall. (Tr. 77). Hernandez testified he had been a drug dealer and in prison five times. He had been a crack addict for 20 years, but had not used for a year. (Tr. 80-82). Hernandez further testified that his medications make him drowsy. (Tr. 83). He also stated he suffers from anxiety but has had no treatment for anxiety. (Tr. 83-84).

Hernandez also completed a Function Report on June 6, 2013. (Tr. 248-254). Hernandez wrote that it hurts when he bends, pulls, lifts, carries or stands too long. Because of back pain, he has difficulty bending to put on his socks and shoes, getting out of the tub or toilet, having sex and playing with his grandchildren. (Tr. 249). He stated that he throws out the trash and helps with the dishes. (Tr. 250). He wrote that he goes outside daily. He walks, drives or rides in a car and goes shopping. (Tr. 251). His hobbies include watching television and sports. His social activities include spending time with his grandchildren and going to church. (Tr. 252). Hernandez indicated that because of his back pain, he cannot lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs or complete tasks. (Tr. 253). He stated that he uses a cane when it hurts to walk. (Tr. 254).

Hernandez completed a second Function Report on November 5, 2013. (Tr. 265-273). Hernandez indicated that he continues to have a difficult time bending, squatting, pulling, and pushing and standing too long. This makes it difficult to get out of bed, dress, bathe, lift his arms and use the toilet. He is in constant pain. He estimated he could walk twenty minutes. (Tr. 266-267, 273). Hernandez wrote that his mother prepares meals but he washes dishes and does some laundry.

(Tr. 268). He goes outside a few hours every day. (Tr. 269). Hernandez identified his hobbies as watching sports and reading the newspaper. (Tr. 270). As for social activities, Hernandez wrote that he attends bible study and church. (Tr. 270).

The undersigned finds that there is nothing in the record to suggest that the ALJ made improper credibility findings, or that he weighed the testimony improperly. The ALJ tied his findings to Hernandez's reported activities of daily living as set forth in the function reports, in the medical records and testified to at the hearing. Accordingly, this factor also supports the ALJ's decision.

### D. Education, Work History, and Age

Here, at step four, the ALJ found that Hernandez could return to his past relevant work as a production assembler. The record shows that the ALJ questioned Susan Rapant, a vocational expert ("VE"), at the hearing. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling*, 36 F.3d

at 436.

The ALJ posed comprehensive hypothetical questions to the VE (Tr. 86-87), about Hernandez's prior work as a production assembler. The record shows the following hypothetical questions were posed at the hearing by the ALJ:

> Q. And, Ms. Rampant, I'd like to pose a couple of hypothetical questions to you. I'd like you to assume that we have someone of the same age, education, and post work experience as the Claimant. Please assume for this hypothetical that the person could only work at a light exertional level. That is to say, they could occasionally lift and carry 20 pounds, but frequently down to only 10 pounds. This person could stand and walk a total of up to six hours in a normal workday with normal breaks or -- and sit for up to six hours. This person cannot climb ladders, ropes, or scaffolding. This person could only occasionally climb ramps or stairs. And this person could only occasionally balance, stoop, bend, kneel, crawl, and crouch. Due to impairments this person can only work around hazards occasionally, occasionally around dangerous machinery or equipment. Now, considering all of those factors, Ms. Rampant, in your opinion could that person do the Claimant's past relevant work?
>
> A. Yes, Your Honor.
>
> Q. Both as listed in the DOT and as actually performed by the claimant?
>
> A. Yes.
>
> Q. Okay. As a second hypothetical would you make the assumptions I just gave you in the first, but add to that that due to the affects of his impairments this hypothetical person would miss work and they would need to miss work at least one day per months, so that's going to be at least four days per year–per—I'm sorry. I'll rephrase. One day per week, which would be at least four days per months. With that additional consideration could that person do the Claimant's past relevant work or would there be any other jobs in the region or nation for such person?
>
> A. I don't think that person could perform competitive employment with that many absences.
>
> Q. Okay. That's just too many absences to sustain full-time work.
>
> A. Yes. (Tr. 86-87).

A hypothetical question is sufficient when it incorporates the impairments which the ALJ has

17

recognized to be supported by the whole record. As discussed above, the ALJ's RFC assessment is supported by substantial evidence, and was incorporated in the hypothetical question posed to the VE. Upon this record, there is an accurate and logical bridge from the evidence to the ALJ's conclusion that Hernandez was not disabled. Based on the testimony of the vocational expert and the medical records, substantial evidence supports the ALJ's finding that Hernandez could perform his past relevant work as a production assembler, which is considered light, unskilled work. The ALJ's reliance on the vocational testimony was proper, and that the vocational expert's testimony, along with the medical evidence, constitutes substantial evidence to support the ALJ's conclusion that Hernandez was not disabled within the meaning of the Act and therefore was not entitled to benefits. Further, it is clear from the record that the proper legal standards were used to evaluate the evidence presented. Accordingly, this factor also weighs in favor of the ALJ's decision.

## V. Conclusion

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which direct a finding that Hernandez was not disabled within the meaning of the Act, that substantial evidence supports the ALJ's decision, and that the Commissioner's decision should be affirmed. As such, the Magistrate Judge RECOMMENDS that Defendant's Motion for Summary Judgment (No. 14), be GRANTED and that the Commissioner's decision be AFFIRMED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking

factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Serv. Auto Assn*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 20th day of August, 2019

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE